UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| The Medical Assurance Company, Inc., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:08-cv-29 ) |
| Alexander C. Miller, Mary Knight, Nolan Knight, Indiana Patients Compensation Fund, and Indiana Department of Insurance, | ) ) ) ) ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on The Fund's Motion to Compel [DE 52] filed by the defendant, Carol Cutter, Commissioner Indiana Department of Insurance and Administrator of the Indiana Patient's Compensation Fund, on December 18, 2009, and the Plaintiff's Motion to Deem Portions of the PCF's Reply Brief in Support of its Motion to Compel Waived, or, in the alternative, Motion for Leave to File a Surreply [DE 60] filed on February 5, 2010. For the following reasons, the Motion to Compel [DE 52] is **DENIED**, and the Motion to Deem Portions of the PCF's Reply Brief in Support of Motion to Compel Waived [DE 60] is **GRANTED**.

Background

This is a declaratory judgment action brought by Medical Assurance Company, Inc., against Dr. Alexander Miller, a malpractice policyholder, Mary and Nolan Knight, parties to a malpractice claim against Miller, and the Indiana Patient's Compensation Fund to determine Medical Assurance's obligations under the policy issued to Miller. In its Complaint for Declaratory Judgment filed on May 1, 2008, Medical Assurance claims that it owes no coverage to Miller on the Knights' claims because the doctor breached his duty to cooperate with Medical Assurance in its defense of the Knights' malpractice claim.

Miller was a Doctor of Osteopathy practicing in Lake County, Indiana. The Knights filed their Proposed Complaint for Medical Malpractice with the Indiana Department of Insurance

1

against Miller on December 1, 2003. Between 2004 and 2006, several other former patients of Miller also filed proposed medical malpractice complaints against him. On September 15, 2005, the medical review panel determined that the evidence supported the conclusion that Miller failed to comply with the appropriate standard of care during the treatment of Mary Knight. The members of the medical review panel rendered its opinion on October 25, 2004 regarding Miller's medical care provided to Mary Knight, and the Knights filed their Complaint against Miller in Lake County Superior Court on November 18, 2005. Miller was terminated from his employment with the Illiana Surgery & Medical Center on or about November 23, 2005, but he did not notify Medical Assurance that his employment had been terminated. Upon leaving his medical practice, Miller did not provide any contact information to his former colleagues. Sometime in April 2006, Miller stopped communicating with his defense counsel, the law firm of Eichhorn & Eichhorn, which was retained by Medical Assurance.

The Eichhorn firm attempted to locate Miller but was unsuccessful. His counsel sent several letters and e-mails to Miller but received no response. Searches for phone numbers to contact Miller failed to uncover working numbers. In September 2006, Miller allegedly left his parents' home in Gary, Indiana, telling them he was checking on the repair of his car, but he did not return. Three days later, his family discovered a handwritten suicide note from Miller. His mother then filed a missing person's report with the local police department. Soon thereafter, Miller was pulled over by police in Cook County, Illinois, for driving a rental car with all of its windows broken out. The police notified his family, and Miller's family returned him to Gary. In late October 2006, Medical Assurance learned that Miller was living with his parents once more and again attempted to contact him by mail there. However, on November 3, 2006, counsel from Eichhorn spoke with Miller's mother, who informed him that she did not know where her son had gone. She agreed to tell Miller to contact the firm if she spoke to him.

Following a trail of leads and tips, Medical Assurance and/or the Eichhorn firm attempted to locate Miller, but neither was successful. In the summer of 2007, the Knights

noticed Miller for deposition and filed a motion to compel his attendance, and Medical Assurance sent a letter to Miller's last known address, his parents' home, informing him of the scheduled deposition. Miller failed to appear, and the court set a hearing to consider sanctions for December 13, 2007. After continued searches to locate Miller, the private investigator employed for the purpose received a letter from Miller's brother asking the investigator, on behalf of the family, to cease efforts to contact Miller. After Miller failed to appear for the deposition and failed to appear at the December hearing, and the Lake County Superior Court entered a Default Judgment against Miller and in favor of the Knights on January 25, 2008.

The Fund has an interest in these proceedings because the Fund potentially may be responsible pursuant to Indiana Code 34-18-15-4 for Miller's malpractice should Medical Assurance prevail in the declaratory judgment action. The Fund disputes Medical Assurance's allegations that Miller has breached the cooperation clause in the policy.

Medical Assurance has filed a motion for summary judgment in the matter, and the Fund has responded with a Federal Rule of Civil Procedure 56(f) request for extension of time to conduct discovery. More specifically, the Fund asks this court to grant its Motion to Compel, alleging that the information it seeks to compel is necessary in order to respond to the pending motion for summary judgment. The Motion to Compel seeks over twenty communications and claims file materials involving Medical Assurance personnel, the Eichhorn firm, and Miller. However, as this briefing proceeded, all but seven communications were provided. These remaining seven have been logged as protected by either attorney-client privilege or work product privilege. Medical Assurance claims to have provided all documents and communications between itself, the Eichhorn firm, and Miller involved in the issues at the heart of the declaratory judgment: whether Medical Assurance made a good faith effort to locate Miller and obtain his cooperation; whether Miller willfully and intentionally failed to cooperate in his defense; and whether this breach of his duty to cooperate prejudiced the insurance company.

Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." **Federal Rule of Civil Procedure 26(b)(1)**. For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Borom v. Town of Merrillville*, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)); *see also Adams v. Target*, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *Shapo v. Engle*, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. **Federal Rule of Civil Procedure 37(a)(2)-(3)**. The burden "rests upon the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 Ibew*, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(citing *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); *McGrath v. Everest Nat. Ins. Co.*, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); *Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services*, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009)(internal citations omitted). The objecting party must show with specificity that the request is improper. *Cunningham v. Smithkline Beecham*, 206 F.R.D. 474, 478 (N.D. Ind. 2009)(citing *Graham v.*

4

*Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478 (citing *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." **Berning v. UAW Local 2209**, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(examining **Patterson v. Avery Dennison Corp.***,* 281 F.3d 676, 681 (7th Cir. 2002))(internal quotations and citations omitted).

The Fund broadly argues in its Motion to Compel that the communications between Medical Assurance, Miller, and the Eichhorn firm are relevant and generally not subject to any privilege, but it has failed to cite any specific case law to support its contention. It its Reply brief, the Fund also has asserted that Medical Assurance waived the privileges by filing this declaratory judgment action and by producing some of the communications between Medical Assurance, the Eichhorn Firm, and Miller. The original brief argued generally that the privileged communications are relevant and that Medical Assurance cannot "selectively use handpicked correspondence and documents", but it failed to use the word "waiver" or "waived" a single time. (Def.'s Mot. to Compel, p. 7)

Arguments raised for the first time by a moving party in a reply brief are deemed waived. *See, e.g., **Wilson v. Knar***, 2008 WL 2856985, *1 (W.D. Wis., July 21, 2008)(citing **Nelson v. LaCrosse County Dist. Attorney***, 301 F.3d 820, 836 (7th Dir. 2002)); **Studio & Partners v. KI**, 2008 WL 426496, *6 (E.D. Wis., Feb. 14, 2008)("[I]t should go without saying that a reply brief [ ] is hardly the correct vehicle for raising new arguments[.]")(citing **TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.**, 491 F.3d 625, 630-31 (7th Cir. 2007)); **Praigrod v. St. Mary's**

*Medical Center*, 2007 WL 178627, *3-4 (S.D. Ind., Jan. 19, 2007)(discussing at length the prohibition of raising new arguments in reply briefs to motions as analogous to Seventh Circuit rule concerning appellate briefing and noting Seventh Circuit's approval of this in **Cleveland v. Porca Co.**, 38 F.3d 289, 297 (7th Cir. 1994)); **Boyer v. Canterbury School, Inc.**, 2005 WL 2370232, *1 (N.D. Ind., Sept. 27, 2005)(striking arguments made for the first time in reply brief); *cf.* **Eagle Services Corp. v. H2O Industrial Services, Inc.**, 2005 WL 1429279, *1 (N.D. Ind., June 8, 2005)(finding that although new issue in reply was not mentioned in motion, the opposing party introduced issue in response). Summarizing the attitude towards withholding arguments or facts until the reply, a district court stated:

> First, this tactic prevented the [defendant] from submitting a meaningful response. Second, it is established beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply. Providing specifics in a reply in support of a general argument in an objection counts as new matter in reply. Third, the court stresses that this is not a situation where the plaintiff is citing to the record in reply to the defendant's response. Instead, he is citing to sufficiently specific evidence for the first time in reply.
>
> Raising an argument generally in a motion [ ] does not give a litigant license to be vague in his original submissions and provide the necessary detail in his reply.

*Murphy v. Village of Hoffman Estates*, 1999 WL 160305, *2 (N.D. Ill., March 17, 1999).

The Fund failed to mention waiver at any time in its Motion to Compel. The Motion simply cited three cases to support the elements that Medical Assurance must show to prove Miller breached the cooperation clause, then stated in five paragraphs – sans legal support – that the Fund "must have access to all communications that occurred between Medical Assurance, the Eichhorn firm, and Dr. Miller." (Def.'s Mot. to Compel, p. 6) The Fund seems to argue relevance, mentioning the standard for relevance in a subtitle and in a few of the argument paragraphs, but it never alluded to waiver of privilege. Although the court could allow the filing of a surreply, the Motion to Compel's textbook example of sandbagging via vague argument, lack of identifiable issues, and dearth of legal support does not warrant consideration of the waiver argument. *See* **Murphy**, 1999 WL 160305 at *2 (discussing tactics, sandbagging, and the

6

court's refusal to give litigants license to be vague in original submissions). Therefore, the Motion to Deem Portions of the PCF's Reply Brief in Support of its Motion to Compel Waived [DE 60] is **GRANTED**. The waiver argument raised by the Fund for the first time in its Reply brief is waived and will not be considered by the court.

The attorney-client privilege protects communications between a client and his lawyer. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L.Ed.2d 584 (1981). The party seeking to establish the privilege bears the burden of establishing the requirements for invoking the attorney-client privilege are met. To determine if a communication falls within the protection of the attorney-client privilege, the court must ask: (1) whether "legal advice of any kind was sought . . . from a professional legal adviser in his capacity as such"; and (2) whether the communication was "related to that purpose" and "made in confidence by the client." *Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612, 618 (7th Cir. 2009) (quoting *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *Id.* (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983))(internal quotation omitted).

Contrary to the Fund's assertion that Medical Assurance cannot selectively choose documents subject to the privilege, a document-by-document claim is precisely what is expected. The Fund has provided the court no reason to question that the four documents logged as privileged as attorney-client communications, PRO 56, 78, 107, and 120-121, are anything other than they appear: communications between attorneys and clients regarding the cases before the medical review panel and, later, the Lake County Superior Court.

The work product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *United States v. Nobles*,

7

422 U.S. 225, 238-39, 95 S. Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). The work product privilege is codified by the Federal Rules of Civil Procedure 26(b)(3):

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The work product doctrine "serves dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E.*, 600 F.3d at 622. The work product doctrine is a qualified privilege and is "distinct from and broader than the attorney-client privilege." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000). In order to fall within the qualified protection from discovery created by Rule 26(b)(3), a party claiming protection must show that the materials sought are: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative. *Caremark*, 195 F.R.D. at 613-14 (citing Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2D § 2024 (1994)). "In limited situations documents protected as attorney work product are nonetheless discoverable if a party can establish a 'substantial need' for the documents and cannot obtain equivalent materials without 'undue hardship.'" *Sandra T.E.*, 600 F.3d at 622 (quoting from Rule **26(b)(3)(A)(ii)**).

The Fund's only argument in its motion to compel asserts relevance as the sole reason to deny the attorney-client or work product privilege. However, the Federal Rules of Civil Procedure acknowledge privileges even for relevant matters. The Fund's motion makes broad

statements about its right to the privileged communications, but it has offered no case law to support the argument that relevance, by itself, can overcome a privilege. *See* ***330 West Hubbard Restaurant Corporation v. United States***, 203 F.3d 990, 997 (7th Cir. 2000)("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel. In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate . . . [.]")(internal citations omitted); ***Mathis v. New York Life Insurance Company***, 133 F.3d 546, 548 (7th Cir. 1998)(reiterating that even pro se litigants are expected so file legal arguments with some supporting authority)("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority forfeits the point. We will not do his research for him.")(internal citations and quotations omitted); ***Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n***, 336 F. Supp. 2d 792, 802 (W.D. Wis. 2005)(quoting ***Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.***, 181 F.3d 799, 808 (7th Cir. 1999)("Arguments not developed in any meaningful way are waived.").

Not until the Reply brief does the Fund mention a substantial need and undue hardship. Accordingly, these arguments also are waived. *See supra* ***Murphy***, 1999 WL 160305 at *2 (discussing waiver of arguments); *see also* ***Boyer v. Gildea***, 257 F.R.D. 488, 493 (N.D. Ind. 2009)(concluding that substantial need argument was waived when first raised in reply brief and even then in a rather conclusory manner, and holding the communications protected under the work product doctrine).

Although the Fund has stated in its Reply that it has no alternative for discovering the information it seeks, it has had the opportunity to depose the investigators who searched for Miller, but did not, and the Fund does not request that in its motion to compel. The court acknowledges that the documents in question were prepared in anticipation of litigation because the Knights filed their Proposed Complaint for Medical Malpractice with the Indiana Department

9

of Insurance against Miller on December 1, 2003, and four of the five documents labeled as attorney work product are dated between August 2004 and September 2008.[1] Because there is no showing of substantial need or undue hardship, the Fund has failed to overcome the work product doctrine. Like the documents deemed privileged as attorney-client communications, the court accepts the log submitted by Medical Assurance. Therefore, the Motion to Compel is **DENIED**.

_____

For the foregoing reasons, the Motion to Compel [DE 52] is **DENIED**, and the Motion to Deem Portions of the PCF's Reply Brief in Support of Motion to Compel Waived [DE 60] is **GRANTED**.

ENTERED This 7th day of July, 2010.

/s/ Andrew P. Rodovich
United States Magistrate Judge

---

[1] The fifth document labeled as attorney work product is undated but described as an internal memo discussing damages issues – a matter completely irrelevant to the declaratory judgment action here.